THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:20-cv-03706-RC |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al*. | ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO ADD EXTRA-RECORD EVIDENCE OR TO ADD DOCUMENTS TO THE ADMINISTRATIVE RECORD**

CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 1

   A. The Court Can and Should Consider the Documents Whether or Not they are Part of the Administrative Record. ................................................................................... 1

   B. The Court May Consider the Thirteen Documents as Extra-Record Evidence Because Without Them the Agency Will Have Failed to Fully Explain Its Action So As To Frustrate Judicial Review. ............................................................................. 2

   C. The Court Can Complete the Administrative Record Because the Thirteen Documents Were Considered By the Agency and Not Included in the Record; A Showing of Bad Faith or Improper Purpose Is Not Required. .................................... 4

   D. The Standard For Determining If a Document is Pre-decisional or Deliberative Under FOIA Applies to the Deliberative Materials Doctrine. ..................................... 6

   E. The Documents Are Neither Pre-Decisional Nor Deliberative Materials Because They Relate to the Implementation of Decisions Already Made. ................................ 8

   F. The FWC Had Entirely Separate and Contrary Interests From the NPS and Therefore the Intra-Agency or Inter-Agency Privilege Does Not Apply. .................... 9

III. CONCLUSION ................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases:**                                                                                                     **Page(s):**

*Am. Oversight v. U.S. Dep't of Health & Hum. Servs.*,
    380 F. Supp. 3d 45 (D.D.C. 2019) ............................................................................................ 11

*BuzzFeed, Inc. v. U.S. Dep't of Just.*,
    419 F. Supp. 3d 69 (D.D.C. 2019) .............................................................................................. 9

*Charleston Area Med. Ctr. v. Burwell*,
    216 F. Supp. 3d 18 (D.D.C. 2016) .............................................................................................. 5

*Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*,
    722 F. Supp. 2d 66 (D.D.C. 2010) ..................................................................................... 10, 11

*Citizens for Resp. & Ethics in Wash. v. U.S. Gen. Servs. Admin.*,
    358 F. Supp. 3d 50 (D.D.C. 2019) .............................................................................................. 9

*Conservation Force v. Jewell*,
    66 F. Supp. 3d 46 (D.D.C. 2014), *aff'd*,
    No. 15-5131, 2015 WL 9309920 (D.C. Cir. Dec. 4, 2015) ....................................................... 8

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) .................................................................................................... 9

*Democracy Forward Found. v. Pompeo*,
    474 F. Supp. 3d 138 (D.D.C. 2020) ............................................................................................ 3

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001) ............................................................................................................ 5, 10, 11

*Lawyers' Comm. for Civil Rights Under Law v. U.S. Dep't of Just.*,
    2020 WL 7319365 (D.D.C. Oct. 16, 2020) .............................................................................. 10

*Oceana, Inc. v. Pritzker*,
    217 F. Supp. 3d 310 (D.D.C. 2016) ........................................................................................ 4, 5

*Oceana, Inc. v. Locke*,
    634 F. Supp. 2d 49 (D.D.C. 2009), *rev'd on other grounds*,
    670 F.3d 1238 (D.C. Cir. 2011) .................................................................................................. 6

*Oceana, Inc. v. Ross*,
    290 F. Supp. 3d 73 (D.D.C. 2018) .......................................................................................... 4, 5

*People for the Am. Way Found. v. Dep't of Educ.*,
    516 F. Supp. 2d 28 (D.D.C. 2007) ............................................................................................ 11

*Reporters Comm. for Freedom of the Press v. Fed. Bureau of Investigation*,
  3 F.4th 350 (D.C. Cir. 2021) ........................................................................................... 7

*Ryan v. Dep't of Just.*,
  617 F.2d 781 (D.C. Cir. 1980) .................................................................................. 10, 11

*In re United States*,
  678 Fed. Appx. 981 (Fed. Cir. 2017) ............................................................................. 9

*Univ. of Colo. Health at Mem'l Hosp. v. Burwell*,
  151 F. Supp. 3d 1 (D.D.C. 2015), *on reconsideration*,
  164 F. Supp. 3d 56 (D.D.C. 2016) .................................................................................. 4

**Statutes, Rules & Regulations**

5 U.S.C. § 706(1) ................................................................................................................. 3

5 U.S.C. § 706(2) ................................................................................................................. 3

I.   **INTRODUCTION**

This case is about whether there has been undue delay or arbitrary and capricious decision-making in the failure of the National Park Service ("NPS") to implement two final decisions it reached and finalized in 2014 and 2015 after notice and comment. This motion is about what documents the Court can consider in deciding whether there has been an undue delay or other arbitrary and capricious action with respect to those decisions. The Government asserts that its administrative record, which leaves out documents that show how the NPS acceded to the demands of the Florida Fish and Wildlife Conservation Commission ("FWC") and put a freeze on implementing those decisions, includes the only documents available to the Court.

II.  **ARGUMENT**

   A.   **The Court Can and Should Consider the Documents Whether or Not they are Part of the Administrative Record.**

The Government asserts that it has not made a final decision as to when, and even as to whether, to implement two final agency decisions: (1) the 2014 Record of Decision by the NPS and the Department of the Interior (together "Defendants") to phase out commercial fishing in Biscayne National Park (the "Park"), and (2) the 2015 Record of Decision by the NPS to implement in that Park a Marine Reserve Zone ("MRZ"). *See* Response in Opposition to Plaintiff's Mot. To Add Extra-Record Evidence or to Add Docs. To the Admin. R., ECF No. 31 ("Def. Response") at 7. Nevertheless, Defendants have provided an administrative record presumably to explain their failure to act. NPCA seeks to have the Court consider thirteen[1] documents as extra-record evidence or to complete the administrative record.

---

[1] Document 2 (the Fact Sheet) is no longer at issue, as Defendants state in the Response that "they will include Document 2 in the administrative record." Response at 15, n.9.

1

We know, as Defendants admit, that they stopped implementation of the two decisions as a result of objections by officials from the State of Florida.  Def. Response at 7, 12.  The thirteen documents are necessary for the Court to understand the full picture of what happened here: that the NPS made decisions in 2014 and 2015; that the NPS appreciated the urgency around implementing the two decisions and moved quickly to implement them; that it was not difficult, as a matter of regulation, to implement these decisions (which goes to whether the delay is "undue"); and that the NPS made great progress on implementation until it improperly pulled the plug on the effort and agreed with the FWC not to implement the decisions.

Defendants argue that: (1) their failure to implement the decisions must be judged by the Government's administrative record and that administrative record alone; (2) the Court cannot consider extra-record evidence because no exception to record review applies; (3) the record cannot be completed with the documents in dispute unless there is a showing of bad faith or improper action and; (4) the documents at issue are pre-decisional and deliberative.  They are wrong on all these points.

> **B.  The Court May Consider the Thirteen Documents as Extra-Record Evidence Because Without Them the Agency Will Have Failed to Fully Explain Its Action So As To Frustrate Judicial Review.**

As an initial matter, it is not clear why this review on what Defendants claim is a decision not yet made would be on the administrative record and that such an administrative record should be entitled to a presumption of regularity.  Certainly, the administrative record in this case should not be solely the documents that were before the decision-maker at the time she made the decisions because, (i) the issue here focuses on what happened during implementation, and (ii) in any event, according to Defendants, "no final decision has been made."  Def. Response at 7.  Instead, the administrative record here consists of the documents that Defendants have compiled in litigation to support their failure to act and undue delay.  To be clear, NPCA is not seeking

discovery. Instead, Plaintiff is asserting that in this situation the administrative record compiled by Defendants is not entitled to a presumption of regularity and that the thirteen additional documents should be added to the administrative record.

Even if the Court judges the agency's actions and inactions by the administrative record Defendants compiled, the Court may also consider extra-record evidence.[2] In Administrative Procedure Act cases, a court ordinarily reviews only the administrative record, "[b]ut as with many rules, there are exceptions." *Democracy Forward Found. v. Pompeo*, 474 F. Supp. 3d 138, 148 (D.D.C. 2020).[3] A court may consider extra-record evidence when "the agency deliberately or negligently excluded documents that may have been adverse to its decision;" "to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors;", or "the agency failed to explain administrative action so as to frustrate judicial review." *Id.* at 149.

---

[2] The court may consider extra-record evidence in support of NPCA's § 706(1) and 706(2) claims. *See Democracy Forward Found. v. Pompeo*, 474 F. Supp. 3d 138, 148–49 (D.D.C. 2020) (assessing whether the court should admit extra-record evidence to support both a § 706(1) and (2) claims). There is no rule, as Defendants argue, that if a complaint asserts a claim under both § 706(1) and (2), the § 706(2) claim undermines the court's ability to evaluate extra-record documents under § 706(1). Def. Response at 16.

[3] Defendants attempt to distinguish *Democracy Forward Foundation* from the present case, but in doing so misconstrue both the case itself and Plaintiff's assertions regarding the case. First, in *Democracy Forward Foundation* the court was assessing claims brought under § 706(1) and 706(2) of the APA, just as Plaintiff has asserted in the case at hand. *Democracy Forward Found.*, 474 F. Supp. 3d at 149. Second, in that case the Government believed there was no final agency action, admitted there were no written documents, and crafted an administrative record from agency personnel's declarations, which is in fact similar to the present case where the Government has stated they have made no final decision, but have still crafted an administrative record from an assortment of documents. *Id.* Lastly, we do not dispute, nor did we suggest that a court <u>must</u> consider extra-record evidence in a "failure-to-act" case; instead, we stated "[t]his Court has recognized that there <u>may</u> be a need in 'failure-to-act' cases to consider documents outside the administrative record." Mot. to Add Extra-Record Evidence or to Add Docs. to the Admin. R., ECF No. 30 at 11 (emphasis added).

3

The thirteen documents at issue here both provide critical background to understand what really happened in this saga, and the Court's consideration of them will help prevent the frustration of judicial review on the question of whether there was undue delay. Without the documents, the Court may understand that the two decisions at issue have not been implemented, as Defendants admit, but the thirteen documents help explain what was behind the failure to implement despite the ease of implementation (which goes to undue delay). The two MOU documents shed light on why the NPS determined not to implement the two decisions. Without these documents, the Court does not have sufficient evidence to evaluate the undue delay or the arbitrary and capricious action. Accordingly, the Court may consider these documents as extra-record evidence.

> C.  **The Court Can Complete the Administrative Record Because the Thirteen Documents Were Considered By the Agency and Not Included in the Record; A Showing of Bad Faith or Improper Purpose Is Not Required.**

These thirteen documents also should be added to the administrative record on a theory of completion.[4] Defendants argue that showing bad faith or improper purpose is required, citing *Oceana, Inc. v. Pritzker*, 217 F. Supp. 3d 310, 319 (D.D.C. 2016). But that case does not reflect the D.C. Circuit's final word on the issue and can be distinguished from the present case. In 2018, the D.C. Circuit in *Oceana, Inc. v. Ross* addressed the question of completing the record and stated that to prevail on a motion to complete the record, a plaintiff must only "'put forth concrete evidence' and 'identify reasonable non-speculative grounds for [her] belief that the

---

[4] Defendants use the term "supplementation" to characterize NPCA's request that the Court add the documents to the administrative record. Def. Response at 18. As the Court has noted the term "supplement" has been used synonymously to refer to both a circumstance in which a party claims the record is incomplete ("the administrative record does not actually reflect the materials that the agency had before it when it made its decision,") and where "a party seeks to add extra-record or extra-judicial information to the record that was concededly *not* before the agency." *Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 13 (D.D.C. 2015), *on reconsideration*, 164 F. Supp. 3d 56 (D.D.C. 2016).

documents were considered by the agency and not included in the record.'" *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 78–79 (D.D.C. 2018) (quoting *Charleston Area Med. Ctr. v. Burwell*, 216 F. Supp. 3d 18, 23 (D.D.C. 2016). In analyzing the documents Plaintiff sought to add to complete the administrative record, the court did not require a showing of bad faith or improper purpose. *Id.* at 79–85. Furthermore, *Oceana, Inc. v. Pritzker* is distinct because in that case the agency had not yet released the alleged pre-decisional and deliberative documents and the court emphasized its desire to protect communications because of the concern that "officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Oceana*, 217 F. Supp. 3d at 319 (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001). Here, the agency has released the disputed documents to Plaintiff and others. Given that, the "front page news" test is not a relevant consideration. *Id.*

On their face, these NPS and DOI documents were considered by the agency. They were produced by the agency in response to a FOIA request and, indeed, include the decision-makers on the issue of implementation of the commercial fishing phase out and the MRZ, such as Brian Carlstrom, Biscayne Park Superintendent (*see* Docs. 4, 14); Margaret Goodro, Biscayne Park Superintendent (*see* Docs. 7, 8, 9); and Bill Cox, Interim Biscayne Park Superintendent (*see* Doc. 5).[5] Furthermore, the documents show implementation of the 2014 and 2015 decisions, such as the close-to-final version of the regulation (*see* Docs. 1, 3), the final draft economic study (*see* Doc. 9), and the 2020 MOU (*see* Docs 11, 12, 13, 14). As explained above, these documents are critical to understanding the undue delay claim. While Defendants admit that they have not implemented—and perhaps will never implement—the 2014 decision to phase out commercial

---

[5] Doc. 6 requested information for a briefing statement to the Deputy Director (not named) on the park strategy, the current status, and the park agenda.

fishing and the 2015 decision to implement an MRZ to protect the Park's coral reefs, the thirteen documents show that implementation was not a difficult task. Plaintiff notes that it is seeking to include these documents because they demonstrate these decisions were not regulatorily complicated actions to take. Accordingly, the Court can and should allow the "administrative record" to be completed with these documents.

### D. The Standard For Determining If a Document is Pre-decisional or Deliberative Under FOIA Applies to the Deliberative Materials Doctrine.

The thrust of Defendants' argument is that these documents are deliberative and pre-decisional because they have not yet decided whether to implement the 2014 and 2015 decisions, and that under what they have entitled their "Deliberative Document Doctrine", the thirteen documents cannot be included in the administrative record under *Oceana, Inc. v. Locke,* 634 F. Supp. 2d 49, 53 (D.D.C. 2009), *rev'd on other grounds*, 670 F.3d 1238 (D.C. Cir. 2011). Def. Response at 28. However, *Oceana's* statement that deliberative documents should not be included in an administrative record does not apply here as these documents are neither pre-decisional nor deliberative.

Essentially out of whole cloth, Defendants fashion the existence of three different deliberative document doctrines: (1) the "Deliberative Process Privilege", which they assert applies in discovery, (2) the "Deliberative Document Exemption", which applies in the context of FOIA, and (3) the "Deliberative Document Doctrine", which they assert applies in the context of an administrative record. Def. Response at 9 n.3. Defendants assert that the "Deliberative Document Doctrine" prevents the court from adding these documents to the record or otherwise considering them. Def. Response at 9–10. However, these three doctrines—which are really just the application of the FOIA standard in different contexts—are not entirely separate and unrelated. Curiously, Defendants acknowledge that the test for "deliberative process" is the

6

same under these three doctrines ("courts in this circuit have used the same test to determine if a document is deliberative" Def. Response at 9), but argue that a decision made in the context of FOIA of whether a document should be withheld as deliberative has no impact on the Government's later subsequent claim that the same document is deliberative.  As was stated in NPCA's opening brief, all of these documents were released under FOIA and, even where certain documents were redacted, the redacted document was released.

Against a backdrop of the documents having already been released, Defendants raise the specter of "the chilling effect that accompanies the prospect of disclosure."  Def. Response at 20–21.  This is a false flag.  In the context of evaluating whether the deliberative process privilege prevents the release of these same documents under FOIA, the Government had to demonstrate that some actual, concrete harm will result from the release.  In the FOIA context, it is not enough to just say that the release would have a chilling effect; "[the] agencies must concretely explain how the disclosure 'would'—not 'could'—adversely impair internal deliberations."  *Reporters Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369–70  (D.C. Cir. 2021).  Here, Defendants released the documents at issue under FOIA to NPCA and another environmental group.  Therefore, the agency already has decided that there is no concern over chilling internal communications and that the release would not actually impair internal deliberations.  NPCA could publish these documents now and, in fact, NPCA cited Document 10 in its publicly-available complaint.  Complaint, ECF No. 1 ("Compl."), ¶ 49.  Defendants purported concerns about the chilling effect of disclosure have been waived.

Interestingly, Defendants (who include DOI and the NPS) assert that they should not be "bound by the decisions of NPS's FOIA office in compiling their administrative record."  Def.

7

Response at 27.  Under Defendants' theory, a decision by one part of an agency tasked with determining whether a document is deliberative and whether its release would cause a concrete harm, does not bind that same agency from arguing in litigation that the possibility of a non-specific harm is a reason to prevent the use of documents already disclosed.  The Government appears to be abandoning the concept of the Unified Executive.  The Court should reject this argument.

Finally, Defendants also assert that even where they have redacted the "deliberative" portion of a document before releasing it under FOIA (*see* Docs. 4, 7, 9), the entire document remains deliberative for the purposes of the "Deliberative Document Doctrine."  Def. Response at 24, 28. There is no basis for this claim and they cite none.

### E. The Documents Are Neither Pre-Decisional Nor Deliberative Materials Because They Relate to the Implementation of Decisions Already Made.

The evaluation of whether a document is "pre-decisional" requires a temporal analysis and a determination of the relevant decision at issue.  *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 60 (D.D.C. 2014), *aff'd*, No. 15-5131, 2015 WL 9309920 (D.C. Cir. Dec. 4, 2015).

Here, the relevant decisions were made in 2014 and 2015 in the form of two Records of Decisions and pursuant to the Administrative Procedure Act, and the documents at issue involve the implementation of those decisions.  Defendants try to move the goal line, claiming that in fact no decision has been made as to either the MRZ or the commercial fishing phase out.  Def. Response at 7.  However, this complaint could not be clearer in focusing not on how the agency reached its 2014 and 2015 decisions, but on Defendants' multi-year failure thereafter to implement the decisions without any public notice or explanation.  Compl. ¶¶ 71–79, 81–88.  All of the documents in dispute relating to the phase out of commercial fishing were created after the NPS signed the Fishery Management Plan/Environmental Impact Statement Record of Decision

("FMP ROD") on July 10, 2014.  Similarly, all of the documents in dispute relating to the MRZ were created after the NPS signed the General Management Plan/Environmental Impact Statement Record of Decision ("GMP ROD") on August 31, 2015.[6]  *Id.*  The analysis should end there, and the Court should find that none of these documents are protected by the deliberative process privilege since they are not pre-decisional.  *See, e.g., Citizens for Resp. & Ethics in Wash. v. U.S. Gen. Servs. Admin.*, 358 F. Supp. 3d 50, 53 (D.D.C. 2019) (finding that materials were post-decisional when they were prepared after a decision was made); *see also BuzzFeed, Inc. v. U.S. Dep't of Just.*, 419 F. Supp. 3d 69, 76 (D.D.C. 2019) (documents that "promulgate or implement an established policy of an agency are not [considered] pre-decisional").

Further, these documents are not deliberative.  The documents do not "expose 'recommendations' or 'suggestions,' and they are not 'subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'"  *In re United States*, 678 Fed. Appx. 981, 988 (Fed. Cir. 2017) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).  To the contrary, these documents reflect facts about what steps the NPS took to implement the commercial fishing phase out and the MRZ, when those steps were taken, and when implementation steps ceased.

### F. The FWC Had Entirely Separate and Contrary Interests From the NPS and Therefore the Intra-Agency or Inter-Agency Privilege Does Not Apply.

As to the two documents that are communications between the FWC and the NPS negotiating, and failing to agree upon, the terms of an MOU (Docs. 12, 13), Defendants contend that communications between a state agency and a federal agency are protected by the deliberative process privilege if the two agencies are "part of a co-regulatory relationship."  Def.

---

[6] Document 2 was the only document in dispute relating to the MRZ that was created before NPS signed the GMP ROD, but as described in Footnote 1, Defendants state in the Response that "they will include Document 2 in the administrative record." Response at 15, n.9.

9

Response at 29.  However, here the federal and state agencies were in negotiation with each other; each agency was pursuing its own interests.  There is no legal basis for protecting written communications with separate third parties where each agency is pursuing its own, unaligned interests with regard to the subject matter of the material.  *See Lawyers' Comm. for Civil Rights Under Law v. U.S. Dep't of Just.*, 2020 WL 7319365 (D.D.C. Oct. 16, 2020).

In fact, it appears that the "co-regulatory relationship" doctrine has been rejected by courts in this Circuit.  *See Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*, 722 F. Supp. 2d 66, 76 (D.D.C. 2010) ("[T]here simply is no precedent for withholding documents under Exemption 5 where a federal agency and a non-federal entity share ultimate decision-making authority with respect to a co-regulatory project." (quoting *People for the Am. Way Found. v. Dep't of Educ.*, 516 F. Supp. 2d 28, 39 (D.D.C. 2007)).

To the extent that there is a co-regulatory privilege, the focus of an inquiry into whether federal and state agency communications are protected under FOIA Exemption 5 (and of course these documents already have been disclosed under FOIA, notwithstanding Exemption 5) is whether each entity is asserting its own independent interests.  If so, the documents are not protected as inter-agency communications. *See People for the Am. Way Found.*, 516 F. Supp. 2d at 36 (discussing the co-regulatory relationship briefly to note that the application of FOIA Exemption 5 "is much narrower than that contemplated by Defendant in this case.").

To the extent Defendants rely on *Ryan v. Department of Justice*, 617 F.2d 781, 789 (D.C. Cir. 1980), *Ryan* predates the Supreme Court's decision in *Department of Interior v. Klamath Water Users Protective Association*, 532 U.S. 1 (2001).  In *Klamath Water Users*, a case involving a dispute as to whether communications between Tribes and the U.S. Bureau of Reclamation were exempt from disclosure as "inter-agency or intra-agency memoranda" under

FOIA Exemption 5, the Supreme Court found that the communications were not exempt from disclosure because the Tribes were communicating with the Bureau "with their own, albeit entirely legitimate, interests in mind." *Dep't of Interior*, 532 U.S. at 3, 12. To the extent *Ryan* remains good law, it requires that an outside consultant or state agency be a neutral party who is not representing its own interests. *See Am. Oversight v. U.S. Dep't of Health & Hum. Servs.*, 380 F. Supp. 3d 45, 54 (D.D.C. 2019) (collecting cases).

The FWC was not a neutral party in the MOU negotiations contained in Documents 12 and 13. The FWC was representing and asserting its own interests in arguing about the terms of the MOU. In fact, as Document 14 indicates, the NPS and the FWC reached an impasse over whether the MOU would address the MRZ and commercial fishing. *Chesapeake Bay Found.*, 722 F. Supp. 2d at 76 (holding that information obtained by state officials is not covered by the deliberative process privilege because the state was representing its own interests). Thus, with respect to the communications surrounding the MOU negotiations between the NPS and the FWC, the communications were not "communications between an agency and non-agency to aid the agency's decision-making process", but instead this was a negotiation between a federal agency and a state agency with each pressing its own interests. The inter-agency exemption does not apply to Documents 12 and 13. They are appropriate for inclusion in the administrative record.

## III.   CONCLUSION

For the reasons stated above, NPCA respectfully requests that the Court order that the thirteen disputed documents be included in the administrative record or be otherwise considered as extra-record evidence.

**Dated**:  April 13, 2022	Respectfully submitted by,

_____
Allison B. Rumsey (D.C. Bar No. 450475)
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Ave., NW
Washington, DC 20001
Tel.:  (202) 942-5095
Fax:  (202) 942-5999
allison.rumsey@arnoldporter.com

Paul Q. Andrews (appearance pro hac vice)
**Arnold & Porter Kaye Scholer LLP**
250 West 55th St.
New York, NY 10019
Tel.:  (212) 836-7173
Fax:  (212) 836-8689
paul.andrews@arnoldporter.com

*Counsel for Plaintiff National Parks Conservation Association*

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2022, I electronically filed the foregoing **PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO ADD EXTRA-RECORD EVIDENCE OR TO ADD DOCUMENTS TO THE ADMINISTRATIVE RECORD** with the Clerk of Court using the CM/ECF system which will send notification of this filing to all counsel of record.