**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION, | : | | |
| | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-3706 (RC) |
| | : | | |
| v. | : | Re Document No.: | 30 |
| | : | | |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, | : | | |
| | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

DENYING PLAINTIFF'S MOTION TO ADD EXTRA-RECORD EVIDENCE OR TO ADD DOCUMENTS
TO THE ADMINISTRATIVE RECORD

## I. INTRODUCTION

Plaintiff National Parks Conservation Association ("NPCA" or "Plaintiff") alleges that

the Department of the Interior, the National Park Service ("NPS"), Secretary of the Interior

David Bernhardt, and Acting Director of the National Park Service Margaret Everson

(collectively, "Defendants") have violated the Administrative Procedure Act ("APA"), the

National Park Service Organic Act ("Organic Act"), and 36 C.F.R. § 2.3 by unlawfully

withholding or unreasonably delaying, or otherwise taking final action to not implement, the

phase-out of commercial fishing and establishment of a Marine Reserve Zone ("MRZ") in

Biscayne National Park.  Compl. ¶¶ 4, 70–88, ECF No. 1.  After Defendants filed the certified

index of the administrative record and furnished the administrative record to Plaintiff in this

matter on June 2, 2021, Notice of Filing of Admin. Rec. Index at 1, ECF No. 20, Plaintiff filed

the instant motion requesting that the Court either supplement the administrative record to

include, or otherwise consider as extra-record evidence, 13 documents, *see generally* Pl.'s Mot.

to Add Extra-Rec. Evid. or to Add Docs. to the Admin. Rec. ("Pl.'s Mot."), ECF No. 30.[1]

For the reasons detailed below, the Court finds that Plaintiff has not made a sufficient

showing under the standards for either supplementing the record or adding extra-record evidence

in APA cases and therefore denies Plaintiff's motion.

## II.  BACKGROUND

### A.  Factual Background

Biscayne National Park (the "Park"), located in Florida, is the largest marine park in the

National Park System and encompasses a coral reef system, estuarine bay, and mangrove

shoreline.  Compl. ¶ 1.  Acting through NPS, the Secretary of the Department of the Interior

manages the Park.  *Id.*  For a number of years, the Park's coral reef ecosystems have been in

decline due to various factors, including fishing pressure and the grounding of ships.  *Id.* ¶ 33.

Its fishery resources have likewise been stressed and in decline.  *Id.* ¶ 34.  In 2000, NPS

embarked on two planning efforts: first, to develop a General Management Plan ("GMP") for the

Park; and second, in cooperation with the Florida Fish and Wildlife Conservation Commission

("FWC"), to develop a Fisheries Management Plan ("FMP").  *Id.* ¶ 35.

Fifteen years and over 100,000 comments later, NPS finalized the Biscayne National

Park Final General Management Plan/Environmental Impact Statement ("GMP EIS") in April

2015.  *Id.* ¶ 37.  This GMP EIS, intended to establish the Park's management over the next 15 to

20 years, *id.* ¶ 36, presented eight alternatives for managing the Park's resources and visitor use,

---

[1] Although Plaintiff's motion originally related to 14 documents, the parties have agreed that one of the 14 documents, labeled "Document 2" by Plaintiff, is no longer at issue and will be included in the administrative record.  Pl.'s Reply Mem. Supp. Mot. ("Pl.'s Reply") at 1 n.1, ECF No. 32; Defs.' Response Opp'n Pl.'s Mot. ("Defs.' Opp'n") at 15 n.9, ECF. 31.

*id.* ¶ 37.  In August 2015, NPS signed a Record of Decision selecting one of these eight alternatives as the Park's new GMP.  *Id.* ¶ 38.  This alternative included the establishment of an MRZ where recreational and commercial fishing would be prohibited.  *Id.* ¶ 40.  Although NPS has previously stated that the target date for establishing the MRZ would be in 2016, the MRZ has to date yet to be implemented.  *Id.* ¶ 48.

Similarly, in May 2014, NPS issued the Final Environmental Impact Statement for the Fishery Management Plan ("FMP EIS"), which presented five alternatives for management of the Park's fisheries.  *Id.* ¶¶ 52–53.  NPS then also signed the Record Decision for the GMP in July 2014.  *Id.* ¶ 52.  The alternative that NPS chose included the promulgation of regulations that would phase out commercial fishing, eventually leading to no commercial fishing, in the Park.  *Id.* at ¶¶ 55, 57.  But NPS has to date yet to propose for public comment or adopt a special regulation codifying the limitations on commercial fishing.  *Id.* at ¶¶ 57–58.

In August 2020, however, NPS executed a Memorandum of Understanding ("MOU") with the FWC for a term of five years, with the possibility of extension for another five years.  *Id.* at ¶ 59.  According to Plaintiff, NPS, by entering into this MOU, "agreed with FWC not to implement the marine reserve zone unless and until it could show that less restrictive management actions would suffice" and further "agreed to the regulation of commercial fishing instead of phasing it out."  *Id.*

### B.  Procedural Background

Plaintiff filed the complaint in this matter in December 2020, alleging that Defendants have, through their action and inaction with respect to the MRZ and phase-out of commercial fishing in the Park, violated the APA, the Organic Act, and 36 C.F.R. § 2.3.  First, according to Plaintiff, NPS's entry into the 2020 MOU with the FWC was arbitrary and capricious final

agency action, in violation of APA § 706(2), whereby the agency abandoned or at least substantially delayed implementation of the two Records of Decision.  Compl. ¶¶ 78, 88. Second, as evidenced by the agency's entry into the 2020 MOU, the agency has in effect unlawfully withheld or unreasonably delayed implementation of the two Records of Decision, in violation of APA § 706(1).  *Id.*  Moreover, because NPS's own regulations have long prohibited commercial fishing in the Park, *id.* at ¶¶ 20 (citing 36 C.F.R. §§ 1.2(a)(3), 2.3(d)(4)), 82, the agency's failure to phase out commercial fishing and its allowance of commercial fishing to continue unabated is for this additional reason arbitrary and capricious agency action, *id.* at ¶ 87.[2]

Defendants filed the certified index of the administrative record and furnished the administrative record to Plaintiff in June 2021.  Notice of Filing of Admin. Rec. Index at 1. Plaintiff then filed the instant motion requesting that the Court either supplement the administrative record to include, or otherwise consider as extra-record evidence, 13 documents. Pl.'s Mot. at 2.  All of the documents in dispute were "produced by NPS to NPCA or another environmental group pursuant to FOIA," and some contained redactions based on NPS's assertion of deliberative process privilege under FOIA exemption 5.  Pl.'s Mot. at 12; Rumsey Decl. ¶¶ 9–10, ECF No. 30-2.  Defendants filed an opposition objecting to Plaintiff's request, *see* Defs.' Opp'n at 1, and Plaintiff submitted a reply, *see generally* Pl.'s Reply.  Plaintiff's motion is ripe for consideration.

---

[2] In addition to raising these claims, Plaintiff also asks that the Court compel NPS's compliance with the Freedom of Information Act ("FOIA") in responding to a request submitted by Plaintiff in April 2020.  Compl. ¶¶ 89–94.  However, the instant motion does not relate to Plaintiff's claim arising from its FOIA request.  Accordingly, the Court does not further address the request here.

### III.  LEGAL FRAMEWORK

Because the Organic Act does not provide "a private right of action or waiver of sovereign immunity," Plaintiff's claim "depend[s] on the government's waiver of sovereign immunity in the APA." *Grunewald v. Jarvis*, 930 F. Supp. 2d 73, 81 (D.D.C. 2013), *aff'd*, 776 F.3d 893 (D.C. Cir. 2015).  Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof."  5 U.S.C. § 702.  Undertaking this review, a court has the power to hold unlawful and set aside agency action that the court finds "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." *Id.* § 706(2)(A), (D).  Though the APA generally limits causes of action to those challenging final agency action, *see, e.g.*, *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 188 (D.C. Cir. 2006), "[o]ne exception occurs where plaintiffs claim that a governmental action was unlawfully withheld or unreasonably delayed," *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001).  In short, "under section 706, federal courts may review two types of claims: those seeking to compel certain required agency actions not yet taken (§ 706(1)), and those seeking to set aside arbitrary 'agency actions' and determinations (§ 706(2))." *Ass'n of Civilian Technicians, Inc. v. United States*, 601 F. Supp. 2d 146, 159 (D.D.C. 2009), *aff'd*, 603 F.3d 989 (D.C. Cir. 2010) (citation omitted).

### A.  Review of the Administrative Record

"[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)).  "Exceptions to

that rule are quite narrow and rarely invoked," *CTS Corp. v. E.P.A.*, 759 F.3d 52, 64 (D.C. Cir. 2014), and the "principle" that "judicial review of agency action is normally to be confined to the administrative record . . . exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny," *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989).  An agency "enjoys a presumption that it properly designated the administrative record absent clear evidence to the contrary." *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005); *see also Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001).  But "in exceptional cases, this presumption of regularity may be rebutted and a court may either (1) supplement an incomplete record with materials that were before the agency and were considered directly or indirectly by the agency decisionmaker, or (2) permit the introduction of 'extra-record evidence.'" *Styrene Info. & Rsch. Ctr., Inc. v. Sebelius*, 851 F. Supp. 2d 57, 62 (D.D.C. 2012) (quoting *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010)).

Supplementing an administrative record "involves a claim 'that some information that should have properly been included in the administrative record was not.'" *Oceana, Inc. v. Locke*, 674 F. Supp. 2d 39, 44 (D.D.C. 2009) (quoting *The Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 113–14 (D.D.C. 2009)).  By contrast, a request for consideration of extra-record evidence is "a request for judicial consideration of evidence that exists apart from the administrative record, on the theory that if the Court did not consider that evidence, 'reviewing agency action would be unnecessarily difficult.'" *Id.*

Moreover, "[i]n order to overcome the presumption that the record was not properly designated, [a] plaintiff must put forth concrete evidence" and "'identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record.'" *Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008)

(quoting *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Engineers*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006)).  The plaintiff "must do more than imply that the documents at issue were in the [agency's] possession," and "prove that the documents were before the actual decisionmakers involved in the determination." *Id.*; *see also Pac. Shores*, 448 F. Supp. 2d at 6.

## B.  Deliberative Process Privilege

 "Courts in this District have long held that materials that fall within the scope of the deliberative process privilege are not part of the administrative record." *Nat. Res. Def. Council, Inc. v. Doremus*, No. 20-cv-1150 (CRC), 2021 WL 2322349, at *2 (D.D.C. June 7, 2021) (quoting *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 82–83 (D.D.C. 2018)).  Further, "[w]hether the deliberative process privilege is asserted in an APA case or in the Freedom of Information Act context, the test for the privilege's applicability is the same." *Id.* (citing *Ross*, 290 F. Supp. 3d at 83).  "To fall within the scope of the deliberative process privilege, a document must be both [pre-decisional] and deliberative." *Taylor Energy Co. v. United States by & through United States Coast Guard Nat'l Pollution Funds Ctr.*, No. 20-cv-1086, 2021 WL 538052, at *9 (D.D.C. Feb. 15, 2021).

## IV.  ANALYSIS

Plaintiff has not made a sufficient showing under the standards for either supplementing the record or adding extra-record evidence in APA cases.  Although Plaintiff contends that, per *Democracy Forward Foundation v. Pompeo*, 474 F. Supp. 3d 138 (D.D.C. 2020), the Court ought not limit its review to the administrative record, Plaintiff fails to address the potential impracticability of applying that case here, where Plaintiff has raised seemingly inextricable APA § 706(1) and § 706(2) claims simultaneously.  Plaintiff then argues in the alternative that the Court ought to supplement the administrative record with the 13 documents—or, failing that,

nevertheless consider the documents as extra-record evidence.  But because Plaintiff has not offered concrete evidence for its belief that these documents were considered by agency decision-makers, Plaintiff has not met the requirements for including these documents in the administrative record.  Nor has Plaintiff demonstrated that these documents fall within one of the exceptions permitting consideration of extra-record evidence.  Its proffered rationale for consideration—understanding the agency's subjective motivations for not implementing the Records of Decision—would not facilitate the Court's review of Plaintiff's claims under the APA, and Plaintiff has not shown that the Court's review would be frustrated absent consideration of these additional documents.

## A.  Limiting Review to the Administrative Record

Plaintiff contends that if, as Defendants aver, there has been no final agency action in this matter, then the Court's review should not be limited to the administrative record and may include the 13 documents at issue.  Pl.'s Mot. at 7–8.  In so arguing, Plaintiff relies on *Democracy Forward*, a case involving claims under both APA § 706(1) and § 706(2) in which another court in this District stated that it would be able to consider extra-record evidence for the § 706(1) claim but not that brought under § 706(2).  474 F. Supp. 3d at 149.  The court ultimately did not need to consider different sets of documents under each claim, however, because it concluded that the proffered extra-record evidence was inadmissible.  *See id.* at 150.  Nevertheless, Plaintiff argues that, given *Democracy Forward*, Defendants cannot reasonably object to the Court's considerations of the 13 documents when Defendants themselves allege that there has been no final agency action.  Pl.'s Mot. at 7–8.

Defendants respond that the record review rule would "be swallowed whole" if a court may review documents outside the administrative record so long as a plaintiff brings a claim

under APA § 706(1).  Defs.' Opp'n at 8.  In support, Defendants cite a case from yet another

court in this District, *Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535 (D.D.C. 2021).  *Id.* at

10–12.  In *Dallas Safari Club*, the plaintiffs, who had asserted claims under both § 706(1) and §

706(2), requested extra-record discovery to depose certain officials or, in the alternative, compel

production of internal deliberative materials.  518 F. Supp. 3d at 537–38.  The court's review

should not be limited to the administrative record, the plaintiffs argued, because they had raised a

challenge to agency inaction under APA § 706(1).  *Id.* at 538.  But the court disagreed,

explaining that it "ma[de] little sense" for the court to "apply different standards of review to

different claims, even though they [were] premised on the same theory of violation."  *Id.* at 538–

39.  By the plaintiffs' reasoning, "the court [would be] confined to the administrative record in

determining whether [the agency's] failure to act was 'per se arbitrary and capricious' (Count 1),

but [would be] permitted to engage in *de novo*, extra-record review to assess whether the

processing of their applications was 'unreasonably delayed' (Count 3)."  *Id.* at 539 (internal

citations omitted).  The court "[could not] abide such an outcome," it stated, particularly when

such a position "[was] belied by the statutory text of the APA."  *Id.*

Presented with these precedents, the Court must decide which aligns more closely with

the facts and claims here.  As an initial matter, the Court understands Plaintiff to be raising

claims under both APA § 706(1) and § 706(2) simultaneously, as did the plaintiffs in *Democracy

Forward* and *Dallas Safari Club*.  *See* Compl. ¶¶ 70–88; Pl.'s Reply at 3 nn.2, 3.  Yet, despite

this matter's similarities with *Dallas Safari Club*, Plaintiff does not grapple with the reasoning

underlying that case.  Nor does Plaintiff explain how the Court might, in following *Democracy

Forward*, consider extra-record evidence for Plaintiff's § 706(1) claim but not the § 706(2)

claim, even though they seem inextricably tied to one another.  Indeed, in describing *Democracy

*Forward*, Plaintiff conveniently sidesteps the case's different treatment of extra-record evidence for each claim, asserting instead that it stands for the proposition that "[t]he court may consider extra-record evidence in support of NPCA's § 706(1) and § 706(2) claims."  Pl.'s Reply at 3 n.2. It is thus unclear to the Court how, as a practical matter, it would even go about applying *Democracy Forward* here if it were to attempt to do so.

Although the court in *Dallas Safari Club* was weighing a different, more burdensome request—extra-record discovery, as opposed to the consideration of extra-record evidence already at hand, 518 F. Supp. 3d at 537—its reasoning against "apply[ing] different standards of review to different claims" applies with the same force in this case, where Plaintiff's § 706(1) and § 706(2) claims "are premised on the same theory of violation," *id.* at 538–39.  And to be clear, the Court does not here take aim at the practice of reviewing extra-record evidence in cases where there has been no final agency action.  The thrust of Plaintiff's allegation is that Defendants have, by signing the 2020 MOU with the FWC, in effect decided not to implement the Records of Decision.  While Plaintiff may couch its claims as arising under both § 706(1) and § 706(2), the Court observes that Plaintiff's core allegation is that Defendants have acted, rather than failing to act—that is, according to Plaintiff, Defendants have already decided not to implement the two Records of Decision.[3]  *See, e.g.*, Pl.'s Mot. at 8 n.3 ("NPCA believes, and has asserted in its Complaint, that the 2020 MOU is final agency action.").  Moreover, Defendants here have compiled a lengthy administrative record.  *See* Defs.' Opp'n at 6.  This is not one of those "failure-to-act cases where, as a practical matter, judicial review is difficult, if not

---

[3] As Defendants state, however, the parties have yet to fully brief "the question of whether a final decision to implement the MRZ and Commercial Fishing Regulations has been made."  Defs.' Opp'n at 5 n.4.  The Court will not make a final determination as to this question until the parties have had opportunity to brief the issue.

impossible, absent extra-record evidence." *Dall. Safari Club*, 518 F. Supp. at 540.  Accordingly,

the concerns underlying *Democracy Forward*—wherein the Government "admit[ted] that there

are 'no written documents reflecting [the agency's] consideration or decision' on whether to

act"—for opening the court's review beyond the administrative record hold less weight in this

case.  *Democracy Forward*, 474 F. Supp. 3d at 149 (citation omitted).

### B.  Supplementing the Administrative Record

In the alternative, Plaintiff advances that the Court should either supplement the

administrative record with the documents or consider them as extra-record evidence because the

administrative record does not adequately explain Defendants' failure to implement the two

Records of Decision, thus frustrating judicial review.  Pl.'s Mot. at 7.  According to Plaintiff, the

deliberative process privilege does not apply, and thus should not prevent these documents from

being added to the administrative record, because: (1) Defendants waived any deliberative

process privilege claim when NPS released the documents under FOIA, *id.* at 12–13; (2) the

documents are not pre-decisional and deliberative, *id.* at 10; and (3) certain documents,

consisting of correspondence between NPS and a state agency, cannot be privileged, *id.* at 13.

Defendants respond that not only are they "not bound by the decisions of NPS's FOIA office in

compiling their administrative record," Defs.' Opp'n at 22, but the documents are also

deliberative and pre-decisional, and disclosure to a third party as a part of a co-regulatory

relationship did not waive their deliberative nature, *id.* at 13–21, 24–25.[4]  Moreover, Defendants

---

[4] Unlike Plaintiff, which centers its arguments on the deliberative process privilege, Defendants do not appear to claim the application of the privilege and instead rely on a "Deliberative Document Doctrine" relevant to the administrative record context.  Defs.' Opp'n at 4 n.3.  Defendants argue that, even if the deliberative process privilege has been waived by release under FOIA, the release does not also waive the "deliberative nature of [a] document." *Id.* at 21.  The Court does not weigh in on whether Defendants have "fashion[ed] the existence"

state, Plaintiff has also failed to meet its burden in showing that an exception to the record

review rule applies given that the administrative record—already consisting of 81 documents that

total over 1,800 pages of material, plus 22 more documents that Defendants have agreed to

add—suffices to enable effective judicial review.  *Id.* at 6–8.

       The Court need not wade into the parties' arguments regarding the deliberative process

privilege or doctrine, however, because it would not be appropriate to add these documents to the

record.  As this Court has previously noted, other courts have used the term "supplement" to

"refer to both a circumstance in which a party argues that the administrative record does not

actually reflect the materials that the agency had before it when it made its decision, and a

circumstance in which a party seeks to add extra-record or extra-judicial information to the

record that was concededly *not* before the agency."  *Univ. of Colo. Health at Mem'l Hosp. v.

Burwell*, 151 F. Supp. 3d 1, 13 (D.D.C. 2015).  This dual use of the term has led to confusion as

to "whether a plaintiff seeking to add evidence it has demonstrated was before the agency (and

thus is properly part of the administrative record) must also show one of the three 'unusual

circumstances'" set forth in *City of Dania Beach v. F.A.A.*, 628 F.3d 581, 590 (D.C. Cir. 2010)

and *American Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008).  *Ross*, 290 F.

Supp. at 77; *see also Univ. of Colo.*, 151 F. Supp. 3d at 13.  But as another court in this District

has similarly reasoned, "the administrative record properly consists of the materials before the

agency and no more *nor less*."  *Ross*, 290 F. Supp. 3d at 78.  "If a party provides concrete, non-

speculative evidence that material an agency did actually consider . . . is absent from the record .

. . that should be the end of the matter."  *Univ. of Colo.*, 151 F. Supp. 3d at 14.  Accordingly, "for

_____

of this doctrine "[e]ssentially out of whole cloth."  Pl.'s Reply at 6.  In any case, Defendants

seemingly concede that the deliberative process *privilege* may have been waived.

a plaintiff to prevail on a motion to complete the record—that is, to add evidence that is properly part of the record but was excluded—[it] must only 'put forth concrete evidence' and 'identity reasonable, non-speculative grounds for [its] belief that the documents were considered by the agency and not included in the record.'" *Ross*, 290 F. Supp. 3d at 78–79 (quoting *Charleston Area Med. Ctr. v. Burwell*, 216 F. Supp. 3d 18, 23 (D.D.C. 2016)) (cleaned up); *see also Univ. of Colo.*, 151 F. Supp. 3d at 15–16. "Only those documents that were *directly or indirectly considered by the [agency's] decisionmaker(s)* should be included in the administrative record." *Pac. Shores*, 448 F. Supp. 2d at 7 (emphasis added); *see also Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) ("[I]f the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included as well."). The plaintiff must also "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist." *Lee Mem'l Hosp. v. Burwell*, 109 F. Supp. 3d 40, 47 (D.D.C. 2015) (citation omitted).

Although Plaintiff has here identified the specific documents it wishes to add to the administrative record, *see id.*, Plaintiff has not met its burden of setting forth the necessary "concrete evidence" and "reasonable, non-speculative grounds for [its] belief that the documents were considered by the agency," *Ross*, 290 F. Supp. 3d at 78–79 (citation omitted). Plaintiff claims that, "[on] their face, these [] documents were considered by the agency" because "[t]hey were considered by the agency in response to a FOIA request and, indeed, include the decision-makers on the issue of implementation of the commercial fishing phase out and the MRZ." Pl.'s Reply at 5. But Plaintiff makes no assertions that seven of the documents (Documents 1, 3, 6,

10, 11, 12, and 13) were ever before any agency decision-makers, let alone considered by them.[5] *See Pac. Shores*, 448 F. Supp. 2d at 6 ("[I]t is not enough for Pacific Shores to state that the documents were before the entire Corps, but rather it must instead prove that the documents were before the Corps' decisionmaker(s)."). And the mere fact that the documents were released by the agency in response to FOIA requests does not mean that the agency decision-makers considered those documents. *See, e.g.*, *id.* at 7 ("Although Plaintiffs imply that the Corps possessed some of the documents because Plaintiffs obtained them through a Freedom of Information Act request, there is no evidence that the Corps' decisionmaker(s) were actually aware of the fourteen documents Plaintiffs seek to include." (internal citation omitted)); *Oceana, Inc. v. Guitterez*, No. 08-cv-00318, 2009 WL 8725110, at *6 (D.D.C. May 28, 2009) (noting that "the set of documents responsive to the FOIA request is conceivably broader than the set of documents considered" by the agency and appropriate for record); *Safari Club Int'l v. Jewell*, 111 F. Supp. 3d 1, 7 (D.D.C. 2015) ("The fact that the agency produced the document in response to a FOIA request—whether erroneously or not—does not demonstrate that the agency considered it in making the determinations at issue in this case."). Thus, the Court rejects Plaintiff's contention that the record should be supplemented with those seven documents (Documents 1, 3, 6, 10, 11, 12, and 13).

Plaintiff specifies six documents (Documents 4, 5, 7, 8, 9, and 14) that "include" the agency decision-makers. Pl.'s Reply at 5. Even for these six documents, however, Plaintiff does no more than "simply assert 'that [the] materials were relevant or were before an agency when it

---

[5] Plaintiff states that Document 6 "requested information for a briefing statement to the Deputy Director (not named)," but does not claim that the "Deputy Director" is an agency decision-maker with respect to the agency decisions at issue or that the information ever made its way to any such Deputy Director for consideration. Pl.'s Reply at 5 n.5.

made its decision,'" which does not suffice for supplementation. *Univ. of Colo.*, 151 F. Supp. 3d at 13 (citation omitted). Although the agency decision-makers identified by Plaintiff either participate in or are copied on the emails, or the document otherwise suggests it was produced for a decision-maker's benefit, Plaintiff has not offered anything concrete to show that the agency in fact *considered* the documents. In the case of Documents 4, 8, 9, and 14, Biscayne Park Superintendents Brian Carlstrom and Margaret Goodro—two of the agency decision-makers identified by Plaintiff, Pl.'s Reply at 5—are only copied on the emails, *see* Ex. 2 to Pl.'s Mot. at 30–33 (Document 4), 44 (Document 8), 46–102 (Document 9), 127–39 (Document 14), ECF No. 30-4. Nothing within the emails or in Plaintiff's briefing suggests that they considered them or any of the attachments to those emails. *See Conservation Force v. Salazar*, No. 1:10-cv-1262 BJR, 2012 WL 11947683, at *4 (D.D.C. Feb. 6, 2012) (concluding that the plaintiffs had not shown that an email sent to the agency decision-maker was relied on by the decision-maker). Similarly, while it is implied that Document 5, which appears to be an agenda (and perhaps an attachment) for briefing Interim Biscayne Park Superintendent Bill Cox, would likely have been put before an agency decision-maker, Plaintiff does not make any showing it was in fact put before Superintendent Cox or that the agency actually considered that document. *See* Ex. 2 to Pl.'s Mot. at 35–36 (Document 5).

Finally, Document 7 consists of an email chain that includes Margaret Goodro, who also sends two emails within the chain. *See id.* at 40–42. But, as illustrated by *Jewell*, her participation in the chain does not on its own suffice to demonstrate that the agency considered the email chain. In *Jewell*, the plaintiffs sought to supplement the administrative record with an email that the plaintiffs had obtained in response to a FOIA request, 111 F. Supp. 3d at 7, and that had been authored by the chief of the United States Fish and Wildlife Service's Branch of

Permits, which was responsible for making the decisions at issue in the case, *id.* at 3, 6.  The plaintiffs argued in part that "the agency must have at least indirectly considered [the email] because [the Branch of Permits chief], a key-decision maker in the 2014 elephant determinations, knew about the email and its contents 'by virtue of his authorship,' and it 'remained available for his use.'"  *Id.* at 7 (citation omitted).  But the court rejected this argument, stating that the plaintiffs "ha[d] done nothing more than imply that the document was in the agency's possession" and "ha[d] not proven that the document was 'before the actual decisionmakers involved in the determination.'"  *Id.* (citation omitted).  Likewise here, Plaintiff has not provided any concrete evidence showing that the agency decision-maker considered these emails, even though "[p]laintiffs must establish that the document was something that the decisionmaker 'directly or indirectly considered' in reaching its decision."  *Conservation Force*, 2012 WL 11947683, at *4 (citation omitted).  In sum, because Plaintiff has not met its burden for supplementation, the Court will deny Plaintiff's request to supplement the administrative record with the 13 documents.

### C.  Considering Documents as Extra-Record Evidence

Plaintiff further requests that, even if the Court does not make the 13 documents part of the administrative record, the Court nevertheless consider them as extra-record evidence.  Pl.'s Mot. at 8–9; Pl.'s Reply at 2–4.  If the Court does not consider these documents, Plaintiff states, the administrative record—containing only one document "that explains the reasons for Defendants' failure to implement" the two Records of Decision—will not adequately explain the agency action or inaction, "thus potentially frustrating judicial review."  Pl.'s Mot. at 7.  Defendants disagree, claiming that the existing record, which runs over 1,800 pages, suffices to enable effective judicial review.  *See* Defs.' Opp'n at 6–7.

As another court in this District helpfully recounted, it appears that the D.C. Circuit has over time whittled the number of circumstances under which a court may consider extra-record evidence down to three:

> (1) [I]f the agency deliberately or negligently excluded documents that may have been adverse to its decision; (2) if background information was needed to determine whether the agency considered all the relevant factors, or (3) if the agency failed to explain administrative action so as to frustrate judicial review.

*United Student Aid Funds, Inc. v. Devos*, 237 F. Supp. 3d 1, 4 (D.D.C. 2017) (quoting *City of Dania Beach*, 628 F.3d at 590 (D.C. Cir. 2010); *see also Am. Bar Ass'n v. United States Dep't of Educ.*, 370 F. Supp. 3d 1, 37 (D.D.C. 2019).[6]

Irrespective of the variations in how courts have articulated the standard for extra-record evidence, Plaintiff has not shown that it meets that standard.  Plaintiff has not alleged that Defendants have deliberately or negligently excluded documents from the record.  Plaintiff also concedes that the administrative record already contains at least one document that provides an explanation for Defendants' actions or inactions, but does not explain why the Court's review would be frustrated despite the inclusion of that document, other than to suggest that the Court would benefit from additional context.  *See* Pl.'s Mot. at 4 & n.1, 7.

The problem, is that, as articulated in its briefing, Plaintiff's argument relies on the implication that the Court's review would be frustrated unless the Court is able to delve into the agency's "real" motivations for its action or inaction.  *See id.* at 1 ("[The documents] are important because they help explain what actually happened to the implementation of the commercial fishing phase out and MRZ decisions."); *id.* at 4 ("Defendants' administrative record

---

[6] Although *City of Dania Beach* discusses "supplement[ing]" the administrative record, 628 F.3d at 590, the case "involved extra-record material, not material that was before the agency," *Ross*, 290 F. Supp. 3d at 78 n.2.

provides context for the failure to act, but does not explain what the [Defendants] were actually doing and why the decisions have not been implemented."); Pl.'s Reply at 4 ("Without the documents, the Court may understand that the two decisions at issue have not been implemented . . . but the thirteen documents help explain what was behind the failure to implement despite the ease of implementation (which goes to undue delay)."); *id.* at 6 ("Plaintiff . . . is seeking to include these documents because they demonstrate these decisions were not regulatorily complicated actions to take.").  But "[w]hen a party challenges agency action as arbitrary and capricious, the reasonableness of the agency's action is judged in accordance with its stated reasons," and "the actual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior."  *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency (Subpoena Duces Tecum)*, 156 F.3d 1279, 1279–80 (D.C. Cir. 1998).  The same principle holds even for failure to act or undue delay cases.  *See Dall. Safari Club*, 518 F. Supp. 3d at 543 ("Even '[w]here there is no administrative record to review,' as may be the case in a failure-to-act challenge, 'the party challenging the agency action may inquire into the decisionmaking process in order to create such a record, but it does not necessarily follow that the party can also probe subjective motivations.'" (quoting *Subpoena Duces Tecum*, 156 F.3d at 1280)).

Because the documents would not, under Plaintiffs' theory for their consideration, facilitate the Court's APA review, Plaintiff's argument that the Court's review would be frustrated if it does not examine these documents is unconvincing.  Accordingly, the Court concludes that Plaintiff has not made an adequate showing to merit consideration of the 13 documents as extra-record evidence.

**V.  CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Add Extra-Record Evidence or to Add Documents to the Administrative Record.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 9, 2023                                RUDOLPH CONTRERAS
                                                        United States District Judge